IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KIEARA C.,[1]

           Plaintiff,

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

           Defendant.

No. 3:23-cv-01336-YY

OPINION AND ORDER

YOU, Magistrate Judge.

      Plaintiff Kieara C. seeks judicial review of the Social Security Commissioner's final decision denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

**PROCEDURAL HISTORY**

      Plaintiff filed an application for supplemental security income on December 11, 2019, alleging a disability onset date of September 1, 1995. The Commissioner denied plaintiff's claim on November 20, 2020, and again upon reconsideration on March 12, 2021. Plaintiff filed a written request for a hearing, and a hearing was held before Administrative Law Judge Richard

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

Page 1 – OPINION AND ORDER

Geib on March 24, 2022. Tr. 36–55. The ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 15–31. The Appeals Council denied plaintiff's request for review on July 10, 2023. Tr. 3–8. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

Page 2 – OPINION AND ORDER

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. Tr. 17. At step two, the ALJ found that plaintiff had the following severe impairments: intellectual disorder versus borderline intellectual functioning and anxiety disorder. Tr. 17. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. The ALJ assessed plaintiff's residual functional capacity ("RFC"), as follows:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:she can perform simple routine tasks and can perform work involving occasional changes in the work routine and setting.

Tr. 22.

At step four, the ALJ determined that plaintiff had no past relevant work. Tr. 30. At step five, the ALJ determined that transferability of job skills was "not an issue because the claimant does not have past relevant work." Tr. 30. The ALJ further found that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as machine packager, hand packager, cleaner II, garment bagger, and housekeeping cleaner. Tr. 30–31. The ALJ therefore found that plaintiff was not disabled. Tr. 31.

//

//

## DISCUSSION

Plaintiff argues that the ALJ erred in (1) assessing the opinions of Gregory Cole, Ph.D., and Sergiy Barsukov, Psy.D.; (2) evaluating her symptom testimony and statements by her mother; and (2) identifying work that she could perform in the national economy where the ALJ's hypothetical question to the VE did not include an accurate education level.

### I.  Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a

medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839 at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

A. **Gregory Cole, Ph.D.**

Dr. Cole saw plaintiff for an intellectual assessment on May 28, 2022, and prepared a report that same date. Tr. 763. Dr. Cole conducted a number of tests, and diagnosed plaintiff with

"unspecified depressive disorder, unspecified anxiety disorder, hypersomnolence disorder, and intellectual disability-mild." Tr. 763-67. Dr. Cole also prepared an accompanying functional assessment in which he opined that plaintiff had (1) mild limitations in the ability to understand, remember, and carry out simple instructions, (2) moderate limitations in the ability to make judgments on simple work-related decisions, (3) marked limitations in the ability to understand, remember, and carry out complex instructions, and in the ability to make judgments on complex work-related decisions, (4) moderate limitations in the ability to interact appropriately with supervisors, co-workers, and the public, and (5) marked limitations in the ability to respond appropriately to usual work situations and changes in a routine work setting. Tr. 760-61. He also noted that plaintiff had "problems with pain and fatigue affecting stamina." *Id.*

The ALJ found Dr. Cole's opinion "is generally persuasive because it is mostly consistent with the record as a whole." Tr. 29. Plaintiff argues that, although the ALJ found Dr. Cole's opinion was persuasive, the ALJ failed to fashion an RFC that reflected plaintiff's marked limitation in the ability to respond appropriately to usual work situations and changes in a routine work setting. Pl. Br. 8–10; *see* Tr. 760-61. The Commissioner counters that the ALJ's finding that plaintiff had moderate limitations in adapting or managing oneself is supported by the record, and that any perceived error in not including further restrictions is harmless because the identified jobs incorporate the omitted limitations. Def. Br. 5–7; Tr. 19; *see Stubbs-Danielson v. Asture*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that error in omitting postural limitations from RFC was harmless because the sedentary jobs identified by the ALJ required infrequent stooping, balancing, crouching, or climbing).

In concluding that plaintiff has moderate limitations in adapting or managing herself, the ALJ noted that plaintiff "has been able to adapt to changing circumstances in her life." Tr. 28.

Page 6 – OPINION AND ORDER

As examples, the ALJ observed that plaintiff is able to care for her two children who have disabilities, she has been married and divorced, she previously lived part-time with her brother and part-time with her mother and navigated between them, and she and her children currently lived with her brother, his wife, and their two children in a single household. Tr. 28. The ALJ concluded "[t]his evidence shows the claimant has had changes and challenges in her life, yet has been able to care for herself and her children despite them." *Id.* The ALJ's conclusion that plaintiff had a moderate limitation in adapting or managing herself is supported by substantial evidence.

Plaintiff also contends the ALJ erred by failing to account for Dr. Cole's opinion that she had a moderate ability to interact appropriately with supervisors. Pl. 8-9. At the hearing, the ALJ asked the VE to identify jobs "that have occasional contact with the general public and coworkers." Tr. 46. There was no discussion about the ability to interact appropriately with supervisors, which is distinct from interactions with coworkers because of the "separate dynamic created by the supervisory relationship." *Dennis v. Colvin*, No. 06:14-CV-00822-HZ, 2015 WL 3867506, at *8 (D. Or. June 20, 2015).

The Commissioner argues that this omission is harmless because the "Dictionary of Occupational (DOT) confirms that these occupations are repetitive jobs that do not involve a significant amount of taking instructions, and consequently would not require much supervision to complete." Def. Br. 5. Some courts have concluded that the omission of a limitation regarding supervisors is "inconsequential" where the occupational definitions do not mention interaction with supervisors or do not require anything more than superficial or incidental contact with supervisors. *See Alexander R. v. O'Malley*, No. CV 23-10167 RAO, 2024 WL 3556161, at *3 (C.D. Cal. July 26, 2024); *Andrea A. v. Saul*, No. 2:19-CV-09908-JC, 2020 WL 5961088, at *3

(C.D. Cal. Oct. 8, 2020). But an employee's relationship with a supervisor involves more than simply taking instructions or getting along with authority figures. It also includes the ability to understand, accept, and respond to criticism, or potentially face the consequences of employee discipline. *See Kristin J. K-M v. Comm'r of Soc. Sec.*, No. C23-5395-MLP, 2023 WL 6284840, at *3 (W.D. Wash. Sept. 27, 2023) (observing "VE's testimony in this case that a supervisor's instructions and/or criticism – regardless of the frequency – cannot be considered "superficial"). This cannot be characterized as superficial here, considering plaintiff's IQ tests results and claimed deficits in cognitive functioning, discussed in more detail below. Thus, the error is not harmless and requires remand. *See Dennis v. Colvin*, No. 06:14-CV-00822-HZ, 2015 WL 3867506, at *9 (D. Or. June 20, 2015) (finding that the omission of a supervisory restriction was no "small error" and was not harmless).

    **B.**    **Sergiy Barsukov, Psy.D.**

The ALJ found the opinion by Dr. Barsukov, a state psychological consultant, to be "persuasive because it is consistent with the record as a whole." Tr. 26. Dr. Barsukov opined that plaintiff was moderately limited in the ability to understand and remember detailed instructions, and should be limited to simple, routine tasks without multi-tasking. Tr. 82. Dr. Barsukov also opined that plaintiff was moderately limited in the ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods. Tr. 82-83. Additionally, Dr. Barsukov observed that plaintiff had adaptive limitations and was moderately limited in the ability to respond appropriately to changes in the work setting, the ability to be aware of normal hazards and take appropriate precautions, and the ability to set realistic goals or make plans independently of others. Tr. 84. Accordingly, Dr. Barsukov opined that plaintiff should be

"restricted to a very predictable, unchanging and safe work environment that does not require significant independent decision making." *Id.*

Plaintiff argues that the RFC's limitation to "occasional changes in the work routine and setting" are less restrictive than Dr. Barsukov's opinion that plaintiff should be limited to a "very predictable" and "unchanging" work environment with "no independent decision-making." But, as the Commissioner observes, the VE was specifically asked by plaintiff's counsel to explain whether the jobs he identified would "satisfy as being characterized as predictable, unchanging and safe work environments," and the VE responded that they were unskilled jobs, with lower reasoning levels, that took a shorter amount of time to learn due to less steps, and "so in that sense, they are more predictable because you're just going to do the same thing over and over again." Tr. 50. While the VE did not parrot the term "unchanging," he described that the jobs involved doing "the same thing over and over again," which fits within the definition of unchanging. Accordingly, any error in failing to use the term "unchanging" rather than "occasional changes' in the RFC is harmless. *See Stubbs-Danielson*, 539 F.3d at 1174.

## II.     Subjective Symptom Testimony/Lay Witness Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The proffered reasons must be "sufficiently specific to permit the

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ discounted plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 24. The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The Ninth Circuit has found that activities such as using public transportation, shopping, preparing meals, performing household chores, performing personal care, socializing with friends, and watching television and playing video

Page 10 – OPINION AND ORDER

games for sustained periods may undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ concluded that plaintiff's statements regarding her symptoms were "inconsistent" with the record and explained that plaintiff's "activities of daily living support a finding that she retain[s] some capacity to function despite her conditions." Tr. 24. Plaintiff reported that she reads at the second or third grade level and her comprehension level is low. Tr. 236. She has difficulty with basic math and counting change, and needs help paying her bills. Tr. 240. She requires multiple explanations in order to understand. Tr. 236. She has a short attention span and "give[s] up on a lot of things." Tr. 241. Plaintiff has panic attacks and extreme anxiety and cannot be in a crowd or around a lot of people. *Id.* Pressure causes plaintiff to panic and makes tasks overwhelming. Tr. 236. Although plaintiff can go to the store, her mother gives her money and explains what to do, and she has to call her mother a couple of times. Tr. 240. Plaintiff needs to set reminders for herself and sometimes needs her mother to remind her to take her medication and brush her teeth. Tr. 238, 240.

Plaintiff explained that she cannot keep a job, and described failed attempts to work at as a hostess and cashier. Tr. 244, 247-49. She described that she has "never had a job [she] worked at for a long time," and that she will "panic and feel like they will know something is wrong with [her]." Tr. 257.

Plaintiff's mother also submitted a written statement in which she described that plaintiff's disability "affects her everyday life, mental state and function." Tr. 294. Plaintiff's mother explained that plaintiff "requires my assistance with explaining instructions, paying bills, completing paperwork, setting appointments, medicine, ordering prescriptions, asking questions, some household tasks, reminding her of personal hygiene needs, reassuring her of doubts or

Page 11 – OPINION AND ORDER

fears, making decisions to ensure she understands, encouraging her, help with shopping, reading, and telling her it's going to be alright." *Id.* Plaintiff's mother described that plaintiff cries often due to her depression and anxiety and needs constant reassurance. *Id.* Plaintiff has very low self-esteem and confidence, and believes no one likes her because she is "dumb, fat, and ugly." *Id.* She has "very few friends out of fear they will find out she can't read or understand things." *Id.* Plaintiff's "panic attacks are becoming more frequent, and she cries a lot and has many emotional days." *Id.* Plaintiff's mother further described that plaintiff becomes emotional when she does not understand, and will panic and become anxious when she gets overwhelmed. *Id.* It is difficult for plaintiff to comprehend things, she has no concept of time, she needs to be reminded daily of her tasks, she needs help with simple directions, she cannot read or understand simple math, and when she shops at the store, she needs a photo of what she needs to purchase. *Id.* Plaintiff's mother assists plaintiff with her day-to-day needs, and plaintiff also receives help from her brothers when needed. Tr. 294.

      The ALJ contrasted plaintiff's statements about her impairments with other evidence contained in plaintiff's function report and medical records, noting that plaintiff cares for her two children by feeding them, bathing them, providing them with what they need, and ensuring they are "clean and safe." Tr. 20 (citing Tr. 237). The ALJ observed that, on a typical day, plaintiff prepares breakfast for herself and her children, watches movies and television shows with her children, plays with them, sometimes does arts and crafts, eats lunch, goes on short walks, eats dinner, and bathes her children before going to bed. Tr. 24 (citing Tr. 237). The ALJ noted that plaintiff showers daily and reported performing personal care without difficulty. *Id.* The ALJ further observed that plaintiff washes dishes and sweeps daily, mops and launders once a week, and vacuums three times a week, and claims she does a good job with these chores. *Id.* The ALJ

also noted that plaintiff drives a car, can take a bus, shops twice a week, takes daily walks with her children, commutes by walking, driving, and riding with others, and can go out alone. *Id.*

The ALJ made note of the written statement provided by plaintiff's mother, but "d[id] not find it more persuasive." Tr. 30. The ALJ observed that, while the statement showed that plaintiff "has some difficulties managing her affairs, . . . the record as a whole does not support greater limitation than provided for in the residual functional capacity." *Id.*

The ALJ erred by failing to address that plaintiff does not accomplish these activities of daily living alone. Plaintiff resides with her brother and his family, and receives day-to-day assistance from her mother. For instance, plaintiff cannot go shopping alone—her mother must provide her with photographs of what to purchase, Tr. 294, she needs to call her mother for assistance, Tr. 240, and she has to return items to the shelf because she cannot add up the amounts correctly herself. Tr. 240. Although plaintiff drives, she had to take the driver's test multiple times, and there is evidence in the record that she was "confused and lost" when driving to her appointment with John Adler, Ph.D. Tr. 657. She had to call him twice and literally "needed [him] to actually show her where to go," which he was able to do because he happened to be driving by her at the moment he returned her call. Tr. 657. Although plaintiff spends time playing with her children and doing arts and crats, she has been described as "childlike" herself. Tr. 60. This description is consistent with plaintiff's IQ score. While the ALJ observed that Dr. Barsukov had questioned the validity of plaintiff's full scale IQ score of 55 from 2020 (Tr. 655-59) due to her higher IQ score of 73 in 2013 (Tr. 391-95), plaintiff's most recent testing revealed a full scale IQ score of 62, Tr. 767, and her high school special education records from 2010 also reflect a full scale IQ score of 62. Tr. 348, 363, i.e., in the "extremely low" range. Tr. 368.

Page 13 – OPINION AND ORDER

Accordingly, this case is remanded for the ALJ to reevaluate plaintiff's subjective symptom testimony and her mother's statement.

## III. Step Five

Plaintiff argues the ALJ failed to identify work that she can perform in the national economy because the ALJ's hypothetical question to the VE did not include an accurate education level.

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [the claimant's] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R § 416.920(g). In making this determination, the ALJ relies on the Dictionary of Occupational Titles (DOT), which is the Social Security Administration's "primary source[] of reliable job information" regarding jobs that exist in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R §§ 416.969, 416.966(d)(1).

The ALJ relies on the testimony of a VE to identify specific occupations that a claimant can perform in light of her RFC. 20 C.F.R § 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). However, "if an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). If that situation arises, "the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). Even if the ALJ fails to include all of a claimant's limitations, such error could still be

harmless if it is "inconsequential to the ultimate nondisability determination." *Colvin*, 806 F.3d at 494.

Plaintiff argues that she had a marginal education, rather than a limited education as assessed by the ALJ, and that because the ALJ proposed a hypothetical with a limited education to the VE, the hypothetical was invalid. Pl. Br. 13–16. The Commissioner argues there was no error and, even if there was, any error would be harmless to the overall disability determination. Def. Br. 9–12.

The ALJ found that plaintiff had a limited education. A limited education is defined as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 416.964(b)(3). The agency will "generally consider that a 7th grade through the 11th grade level of formal education is a limited education." *Id*. A marginal education is defined as "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." 20 C.F.R. § 416.964(b)(2). "[F]ormal schooling at a 6th grade level or less is a marginal education." *Id*.

According to plaintiff's disability report, she completed tenth grade. However, the numerical grade level is used "if there is no other evidence to contradict it." 20 C.F.R. § 416.964(b). Plaintiff's records show that she was in an Individualized Education Plan ("IEP"). Tr. 307. In her literacy curriculum, plaintiff was "comprehending independent text at the 3rd grade level," and in math, she was "able to compute multiple addition problems that do not include carrying and subtraction without borrowing when she is not using a calculator." Tr. 309. These assessments contradict the numeric grade level.

The Commissioner argues substantial evidence supports the ALJ's assessment of limited, rather than marginal, education, because plaintiff indicated she completed tenth grade on her disability report, she can read and write more than her name in English, her IEP report noted that she was "an independent and mature student who appears to be functionally appropriate when compared to age peers," and she was going to graduate with a "regular diploma" in three years. Def. Br. 10 (citing Tr. 229, 231, 309–10). The Commissioner's arguments are unavailing. Although plaintiff's highest level of education was tenth grade, she was not operating at a tenth-grade level. Her ability to read and write more than her name in English is only indicative that she is not illiterate, as defined in 20 C.F.R. § 416.964(b)(1). The notation that plaintiff anticipated graduating in three years with a regular diploma was speculative and dependent on plaintiff continuing with her IEP, which did not occur. The Commissioner's last piece of evidence, that plaintiff was independent, mature, and "functionally appropriate when compared to age peers," ignores the context in which this statement was written, which is that while plaintiff may have been "functionally appropriate" when compared to her peers, she was not academically appropriate, as noted by her third-grade reading level and issues with anything greater than basic math. Tr. 309. Given this information, plaintiff had a marginal education, rather than a limited education.

The Commissioner argues that any error in assessing plaintiff's education level is harmless, given that plaintiff would still be capable of performing the jobs identified by the VE. Def. Br. 11–12. Given this case is being remanded for other reasons, the ALJ will have the opportunity to remedy this error. Therefore, the court does not consider whether this error is harmless.

//

Page 16 – OPINION AND ORDER

V.   **Remand**

Within the court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the court can exercise its discretion to remand for an award of benefits. *Id.* The court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Here, there are outstanding issues left to be resolved with respect to the errors discussed above. *See Taylor v. Berryhill*, 729 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved

before a determination of disability can be made.). Therefore, remand for further proceedings is appropriate so that the ALJ can properly evaluate Dr. Cole's medical opinion, properly consider plaintiff's subjective symptom testimony and her mother's statements, reformulate the RFC if necessary, seek further VE testimony at step five if necessary, or award benefits.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED January 22, 2025.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge